# United States District Court
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | § | |
|---|---|---|
| IN RE CONVEX COMPUTER CORP. | § | CIVIL ACTION NO. 3:91-CV-1563-S |
| SECURITIES LITIGATION | § | |
| | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Plaintiffs' Motion for an Order Directing a *Cy Pres* Distribution of Residual Settlement Funds [ECF No. 62]. For the following reasons, the Court grants the Motion.

### I. BACKGROUND

On August 1, 1994, the Court approved the settlement of the above-captioned securities class action lawsuit, *see* ECF No. 60, and appointed Heffler, Radetich & Saitta LLP ("Heffler") as the claims administrator responsible for implementing the distribution of the settlement proceeds. *See* Mem. in Supp. of Pls.' Mot. for Cy Pres Distribution ("Mem.") 1. During the first distribution, Heffler distributed a fund of $2,601,993.42 to 709 class members. *See id.* There is approximately $54,007.21 remaining in accounts held for the benefit of the class. *See id.* Plaintiffs filed the pending Motion on March 9, 2020, asking the Court to authorize a *cy pres* distribution of the remaining funds to be divided evenly between (1) the Community Service Fund of the Dallas Bar Association ("CSF") and (2) Community Legal Services of Philadelphia ("CLS").

### II. ANALYSIS

"The equitable doctrine of *cy pres* ensures that undistributed or unclaimed funds are put to their 'next best compensation use, e.g., for the aggregate, indirect, prospective benefit of the class.'" *Duncan v. JPMorgan Chase Bank, N.A.*, Civ. No. SA-14-CA-00912-FB, 2016 WL 4419472, at *17 (W.D. Tex. May 24, 2016) (quoting *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 474 (5th Cir. 2011) (citation omitted)). A *cy pres* distribution is appropriate "only when it is

not feasible to make further distributions to class members." *Klier*, 658 F.3d at 475 (internal quotation marks omitted) (citation omitted). "It is infeasible to make further distributions when (1) remaining class members cannot be identified or chose not to participate; (2) the claim amounts are too small to make individual distributions economically viable, and/or (3) the class members' damages claims are fully satisfied by the initial distribution." *Duncan*, 2016 WL 4419472, at *17 (citing *Klier*, 658 F.3d at 475 & n.15). Here, Heffler represents that a cost of a further distribution would not be administratively feasible. *See* Sincavage Decl. ¶ 5. Specifically, it represents that "with such a small balance of $54,007.21 remaining in the Net Settlement Fund prior to the deduction of administrative fees and costs, it was and is not feasible to perform a second distribution to Authorized Claimants." *Id.* Therefore, a *cy pres* distribution is warranted.

When a *cy pres* distribution is appropriate, the funds should be "distributed for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated." *Klier*, 658 F.3d at 474 (citation omitted); *see also In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1077 (S.D. Tex. 2012) (approving *cy pres* distributions where the recipient organizations "reasonably approximate the interests pursued by the class"). Here, the underlying class action litigation involved claims of securities fraud under the Securities Exchange Act. *See* Mem. 3. One purpose of the Securities Exchange Act is to protect investors from false representations and other fraud. *See Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967). The Court finds that the proposed recipients of the *cy pres* distributions "reasonably approximate the interests pursued by the class." *See In re Heartland Payment*, 851 F. Supp. 2d at 1077.

CSF focuses on the Dallas Volunteer Attorney Program, which is a pro bono program dedicated to increasing and enhancing legal services to low-income clients through recruitment,

training, and support of volunteer attorneys. *See* Mem. 3. The Dallas Volunteer Attorney Program provides advice and representation in a variety of cases, including, but not limited to, consumer cases. *See id.* Accordingly, its services include representing low-income individuals who have been affected by fraudulent practices. The Court finds that this is consistent with one of the purposes of the Securities and Exchange Act: to protect investors from misrepresentation and other fraud. *See Tcherepnin*, 389 U.S. at 336.

Similarly, CLS has helped over one million clients who could not afford to pay for legal representation since its inception in 1966. *See* Mem. 3. As with CSF, CLS protects low-income clients from the risk of loss affecting their income, including from fraudulent conduct. *See id.* Accordingly, the Court finds that CLS "reasonably approximate[s] the interests pursued by the class." *See In re Heartland Payment*, 851 F. Supp. 2d at 1077.

### III. CONCLUSION

For the foregoing reasons, the Court grants Plaintiffs' Motion, authorizes a *cy pres* distribution of the residual settlement funds, and orders that such residual funds be divided evenly between the Community Service Fund of the Dallas Bar Association and the Community Legal Services of Philadelphia.

**SO ORDERED.**

SIGNED March 31, 2020.

*[signature]*

KAREN GREN SCHOLER
**UNITED STATES DISTRICT JUDGE**